[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 06-16180

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 25, 2007
THOMAS K. KAHN
CLERK

D. C. Docket No. 04-03308-CV-GET-1

WENDY PETERSON,
Individually and as next friend of
Jonathon Peterson, a minor,

                                        Plaintiff-Appellant,

    versus

AMBER BAKER,
EDDIE MOSLEY,
TRUDY SOWAR,
PAULDING COUNTY BOARD OF EDUCATION,
PAULDING COUNTY SCHOOL DISTRICT,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(October 25, 2007)**

Before EDMONDSON, Chief Judge, CARNES and FAY, Circuit Judges.

PER CURIAM:

This case arises from a hostile encounter between a teacher and her student. Plaintiff-Appellant Wendy Peterson ("Plaintiff"), acting on behalf of her minor son Jonathon Peterson ("Jonathon" or "the student"), appeals the district court's decision granting summary judgment in her Section 1983 suit to Defendants Amber Baker ("Baker" or "the teacher"), Jonathon's eighth-grade teacher; Eddie Mosley ("the principal"), principal of Jonathon's school; Trudy Sowar ("the superintendent"), superintendent of the school district; and the Paulding County School District ("the school district").  Seeing no reversible error, we affirm the judgment.

## I. Background

This action pursuant to 42 U.S.C. § 1983 arises from a confrontation between Jonathon and his eighth-grade reading teacher.  As a first-year teacher, Baker taught remedial reading at Herschel Jones Middle School.  During the 2003-2004 school year, fourteen-year-old Jonathon was assigned to her class.

The incident giving rise to this lawsuit occurred in February 2004 when Jonathon and classmate Willie Landers arrived late to class.  Both students were

talking during class; so, the teacher told Landers to leave the classroom. Jonathon testified that he thought the teacher directed him to step outside as well. When Jonathon attempted to leave the room with Landers, the teacher told Jonathon to sit back down; but he refused "[b]ecause [he] wanted to leave." The teacher yelled at Jonathon and shook her finger in his face. As he moved toward the classroom door, the teacher then placed her left arm across the doorframe, again instructing Jonathon to take his seat. Still, Jonathon refused to be seated. The teacher claims that Jonathon pushed her, causing her to stumble, and that he grabbed her hand and knocked her arm from the doorframe. Jonathon admits only that he "moved her hand off the door . . . not hard, just pushed it down." That Jonathon initiated physical contact with the teacher is undisputed.

Then, as Jonathon reached for the doorknob, the teacher grabbed his neck. In his deposition, Jonathon claimed that she "squeez[ed] my neck to where I was starting not to be able to breathe." According to the teacher, she was afraid that Jonathon was going to strike her; so, she put her hand up to Jonathon's neck or collarbone and pushed him away.

The record is unclear on the extent to which the teacher "choked" Jonathon. While Jonathon testified that he "was starting not to be able to breathe," he also testified more categorically that the teacher "squeez[ed] me until I couldn't

breath." Neither party has pointed to evidence indicating the length of time that the teacher squeezed Jonathon's neck. Nevertheless, according to Jonathon, when the teacher relinquished her grasp, "it took me a while to catch my breath." As Jonathon left the classroom, he turned back to the teacher, cursed at her, and told her never to put her hands on him again.

After leaving the building for a while, Jonathon went to the school administrative office to report the incident. Jonathon testified in his deposition that he was not suffering pain when he arrived at the office; but according to Principal Mosley, red marks were visible on Jonathon's neck. On the same day, Plaintiff – Jonathon's mother – also reported the incident to local police who took photographs of Jonathon and observed blue and red bruises as well as a scratch on his neck. The school district immediately placed the teacher on administrative leave. Soon thereafter, she resigned.

Plaintiff brought this Section 1983 action, with supplemental state law claims, on behalf of her son Jonathon against the teacher. Plaintiff claimed that the teacher administered corporal punishment by grabbing Jonathon's neck in violation of his substantive due process right to bodily integrity under the Fourteenth Amendment. Plaintiff also sued the principal, the superintendent, the school district, and the Paulding County Board of Education ("the board of

4

education")[1] for failure to train, to instruct, and to supervise the teacher, which – Plaintiff says – resulted in the constitutional violation.

In granting summary judgment for all defendants, the district court determined that, even assuming the teacher's act was corporal punishment, it "[did] not rise to the level of a substantive due process violation" because the injury was de minimus and because the teacher did not act with the willful or malicious intent to injure the student.[2] On Plaintiff's state law claims, the district court determined that the teacher was entitled to official immunity under Georgia law because she did not act with malice toward the student or otherwise intend to cause the student harm in performing her discretionary duty to maintain discipline in the classroom.[3] Plaintiff now appeals.

---

[1] Plaintiff concedes that the district court properly granted the board of education's motion for summary judgment. We do not review the district court's judgment on this issue.

[2] Although the district court concluded that the teacher committed no constitutional violation, it also determined that she was entitled to qualified immunity because "the law [had] not sufficiently established" that de minimus injuries inflicted by corporal punishment for obvious student misconduct constituted a due process violation. Furthermore, because the teacher did not infringe the student's constitutional rights, the district court concluded that the remaining defendants "[were] entitled to summary judgment on all of plaintiff's claims." Notwithstanding its determination that the teacher had not violated the Constitution, the district court also proceeded to address Plaintiff's supervisory liability claims against the principal, the superintendent, and the school district, concluding that each was entitled to qualified immunity under federal law.

[3] The district court also decided that the principal and the superintendent were entitled to official immunity under Georgia law because they did not act with malice or with an intent to harm in performing their discretionary duties. In addition, the district court concluded that the school district was not subject to tort liability under state law because it had not waived its sovereign immunity. Because Plaintiff does not purport to challenge these decisions in her brief, we do not address them

5

## II. Standard of Review

Summary judgment is warranted only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We review a district court's decision granting summary judgment de novo. Arrington v. Helms, 438 F.3d 1336, 1341 (11th Cir. 2006). In doing so, we apply the same legal standards as the district court; and we view all facts, as well as all reasonable inferences therefrom, in the light most favorable to the non-moving party – here, the Plaintiff. See id.

## III. Discussion

A.    Section 1983 Claims

Plaintiff contends that the district court erred in finding no genuine issues of material fact on her federal claim against the teacher. The heart of Plaintiff's argument is that a genuine dispute exists about whether the teacher acted in self-

---

here. Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) ("When an appellant fails to offer argument on an issue, that issue is abandoned.").

defense or whether she administered corporal punishment. Plaintiff asserts that the teacher's act of grabbing and squeezing Jonathon's neck was excessive corporal punishment in violation of clearly established constitutional law. In response, the teacher argues that the undisputed facts demonstrate that her act was not excessive and that she merely reacted to Jonathon's provocation in self-defense. To us, it is unimportant whether the teacher either acted in self-defense or imposed corporal punishment because her conduct, even if we assume it to be motivated solely by an intent to punish, did not violate the Constitution.

Officials acting under the color of state law violate the substantive component of the Due Process Clause only when their conduct "can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." County of Sacramento v. Lewis, 118 S. Ct. 1708, 1717 (1998) (internal quotation marks omitted). The Supreme Court has made clear "that the due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm." Id. We have stressed in our own cases that Section 1983 must not be used "as a 'font of tort law' to convert state tort claims into federal causes of action." Waddell v. Hendry County Sheriff's Office, 329 F.3d 1300, 1305 (11th Cir. 2003). We also have noted that "even intentional wrongs seldom violate the Due Process Clause." Id. Briefly

7

stated, "conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." Lewis, 118 S. Ct. at 1718.

Here, Plaintiff does not contend that the teacher's conduct was wholly unjustified by a government interest. In other words, Plaintiff does not argue that the teacher's conduct had no legitimate disciplinary purpose. As the district court noted, neither party disputes that the teacher acted within the scope of her discretionary authority when the allegedly wrongful act occurred. Instead, Plaintiff claims that the teacher imposed corporal punishment in response to Jonathon's behavior in an unconstitutionally excessive manner. Because Plaintiff rests her claim on the premise that the teacher intended to administer corporal punishment by grabbing Jonathon's neck, we assume for the purpose of deciding this appeal that the teacher's use of force constituted corporal punishment.[4]

Broadly speaking, the law of this circuit says that "excessive corporal punishment, at least where not administered in conformity with a valid school

---

[4]Not all physical injuries to a student caused by a teacher amount to corporal punishment. A range of teacher conduct exists that is neither corporal punishment nor so conscience-shocking as to trigger a substantive due process violation. See, e.g., Lillard v. Shelby County Bd. of Educ., 76 F.3d 716, 725-26 (6th Cir. 1996) (concluding that "it is simply inconceivable that a single slap [to the face] could shock the conscience," even though the teacher's conduct had no legitimate disciplinary purpose). It is this range of conduct for which state tort law might be the appropriate source of relief.

policy authorizing corporal punishment . . . , may be actionable under the Due Process Clause when it is tantamount to arbitrary, egregious, and conscience-shocking behavior." Neal v. Fulton County Bd. of Educ., 229 F.3d 1069, 1075 (11th Cir. 2000). To show that the allegedly excessive corporal punishment is conscience-shocking, a plaintiff must prove at a minimum that "(1) a school official intentionally used an amount of force that was obviously excessive under the circumstances, and (2) the force used presented a reasonably foreseeable risk of serious bodily injury."[5] Id. We determine whether the amount of force used is obviously excessive by considering the totality of the circumstances. Id. Among other things, we look to "(1) the need for the application of corporal punishment, (2) the relationship between the need and amount of punishment administered, and (3) the extent of the injury inflicted." Id.

Based on the facts as alleged by Plaintiff, we conclude that the teacher's use of force was not obviously excessive. The justification for some corporal punishment was considerable given that the student repeatedly disobeyed the teacher's command to be seated and given that the student first touched the teacher

_____

[5]As we pointed out in Neal, "[e]xcessive corporal punishment claims have an objective and a subjective component, both of which must be met before a school official may be subject to liability." 229 F.3d at 1075 n.3. But, if the use of force was objectively reasonable – that is, if it "was not excessive as a matter of law and was a reasonable response to the student's misconduct" – then the subjective intent of the school official is unimportant. Wise v. Pea Ridge Sch. Dist., 855 F.2d 560, 563 n.4 (8th Cir. 1988) (cited in Neal, 229 F.3d at 1075 n.3).

by forcing her hand from the doorframe.  Also, the extent of the student's bodily injury was not serious.  Notwithstanding the slight bruising and red marks on his neck as well as his temporary loss of breath, the student's injury was minor: Plaintiff points to no evidence that medical care was administered or that permanent marks remained on the student's body, and all pain had passed by the time the student reported the incident to the school office.

Furthermore, although we regard the teacher's alleged choice of method as inappropriate, we cannot say that the amount of force at issue here was totally unrelated to a need for punishment.  The student had defiantly disobeyed the teacher's repeated instructions to be seated; and, more important, he had used physical force against the teacher by pushing her hand from the doorframe.  The student's misconduct, therefore, justified some corporal punishment.  The teacher's alleged means were, to say the least, untraditional; and we do not condone them.  But, given that the extent of the student's injury was no worse than that suffered under more traditional forms of corporal punishment like paddling, we conclude that the amount of force used here was reasonably related to the need for punishment.  See id. at 1076 ("[T]he kind of minor injury suffered by a student during the administration of traditional corporal punishment will rarely, if ever, be the kind of injury that would support a federal due process claim . . . ."); see also

10

Saylor v. Bd. of Educ., 118 F.3d 507, 515 (6th Cir. 1997) (holding that, as a matter of law, bruises caused by five licks of a paddle were not so severe that the paddling "amounted to a brutal and inhumane abuse of official power literally shocking to the conscience" (internal quotation marks omitted)). Thus, based on the totality of the circumstances as observed in the light most favorable to Plaintiff, we conclude that the student's punishment was not obviously excessive.[6]

Our conclusion is not out of line with case law from this circuit as well as other circuits. In short, the standard is shock the conscience and totality of the circumstances; and when some reason exists for the use of force, constitutional violations do not arise unless the teacher inflicts serious physical injury upon the student. See, e.g., Kirkland v. Greene County Bd. of Educ., 347 F.3d 903, 904 (11th Cir. 2003) (excessive corporal punishment under the Due Process Clause where a school principal repeatedly struck a student with a metal cane on the head, ribs, and back, leaving a large knot on the student's head and causing him to suffer continuing migraine headaches); Neal, 229 F.3d at 1071 (a student successfully

_____

[6]Because the punishment was objectively reasonable, to resolve Plaintiff's federal claim, we need not examine the teacher's subjective intent. See Wise, 855 F.2d at 563 n.4.

Also, absent a predicate constitutional violation, we have no occasion to consider Plaintiff's federal claims against the principal, the superintendent, and the school district for failure to train, to instruct, and to supervise the teacher. See Blyden v. Mancusi, 186 F.3d 252, 265 (2d Cir. 1999) ("Of course, for a supervisor to be liable under Section 1983, there must have been an underlying constitutional deprivation.").

alleged a substantive due process violation for a serious injury sustained when a teacher, using a metal lock, "knocked [the student's eye] completely out of its socket"); P.B. v. Koch, 96 F.3d 1298, 1304 (9th Cir. 1996) (a school principal violated the Constitution by slapping, punching, and choking multiple students when "there was no need to use force"); Metzger v. Osbeck, 841 F.2d 518, 519-20 (3d Cir. 1988) (summary judgment for the defendant teacher was inappropriate where the teacher grabbed a student around the neck, which caused the student to lose consciousness and fall to the ground, resulting in a broken nose, lacerated lip, and fractured teeth); Webb v. McCullough, 828 F.2d 1151, 1159 (6th Cir. 1987) (a "trier of fact could find" that a school official's need to strike a student "was so minimal or non-existent that the alleged blows were a brutal and inhumane abuse of . . . official power, literally shocking to the conscience"); Garcia v. Miera, 817 F.2d 650, 653, 658 (10th Cir. 1987) (a reasonable jury could find a substantive due process violation where a teacher struck a young student with a split paddle on two occasions, one of which caused bleeding, welts, and a permanent scar and the other of which caused severe bruises). Cf. London v. Dirs. of the DeWitt Pub. Sch., 194 F.3d 873, 874-75 (8th Cir. 1999) (no substantive due process violation where a teacher, after ordering a non-compliant student who was engaged in "horseplay" to leave the school cafeteria, dragged the student from the cafeteria in

12

a physical scuffle, banging the student's head on a pole and causing only minor injury).

B.     State Law Claims

We turn now to Plaintiff's state law claims against the teacher for battery and intentional infliction of emotional distress. Georgia law provides that state officers and employees "are subject to suit only when they negligently perform or fail to perform their ministerial functions or when they act with actual malice or intent to cause injury in the performance of their official functions." Gilbert v. Richardson, 452 S.E.2d 476, 483 (Ga. 1994) (internal quotation marks omitted). That the teacher here was engaged in a discretionary function (as opposed to a ministerial function) is undisputed. So, our inquiry is limited to the question of whether the teacher acted with actual malice or with an intent to cause injury.

In the context of official immunity, "actual malice requires a deliberate intention to do wrong and denotes express malice or malice in fact." Adams v. Hazelwood, 520 S.E.2d 896, 898 (Ga. 1999) (internal quotations marks and citations omitted). That "[a]ctual malice requires more than harboring bad feelings about another" is well established. Id. "While ill will may be an element

of actual malice in many factual situations, its presence alone cannot pierce official immunity; rather, ill will must also be combined with the intent to do something wrongful or illegal." Id. As we understand it, malice in this context means badness, a true desire to do something wrong. In addition, "actual intent to cause injury" means "an actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury." Kidd v. Coates, 518 S.E.2d 124, 125 (Ga. 1999) (internal quotation marks omitted).

Plaintiff contends that a genuine issue of fact exists about the teacher's state of mind and that the teacher's state of mind ought to be resolved by a jury. Plaintiff specifically points to disputed facts about whether or not the teacher acted in self-defense. Plaintiff also relies on testimony recounting earlier incidents in which the teacher made disparaging or humiliating remarks to the student.[7]

Even though the official immunity inquiry involves an examination of the teacher's state of mind, we may still decide this issue at the summary judgment stage if Plaintiff fails to produce evidence of actual malice or of an intent to cause injury. See, e.g., Adams, 520 S.E.2d at 899 ("In the absence of evidence that [the

---

[7]For example, the student testified that the teacher called him a "klepto" and said that he was "lazy" and "stupid."

14

defendant] acted with actual malice, summary judgment was properly entered in his favor.").

That the teacher previously made derogatory comments to the student or otherwise harbored ill will toward the student is not enough to evidence either actual malice or an intent to injure. See id. at 898-99 (concluding that nothing evidenced a deliberate intent to commit a wrongful act or to injure the plaintiff student, notwithstanding evidence that the defendant teacher acted with ill will); see also Butler v. McNeal, 555 S.E.2d 525, 526-27 (Ga. Ct. App. 2001) (concluding that the record lacked evidence showing that the defendant teacher acted with actual malice or that she intended to injure the plaintiff student, even though the court accepted the student's account that the teacher purposefully pulled the student's chair out from under him, causing the student to fall to the ground).

Nor is Plaintiff's allegation, which we accept, that the teacher sought to punish the student, rather than act out of self-defense, evidence of a deliberate intent to do something wrong or to cause injury. See Adams, 520 S.E.2d at 898-99 (concluding that the defendant teacher did not act with actual malice despite evidence that the teacher devised a punishment that was demeaning and had the potential to cause harm). This point is true even if the teacher's conduct would

15

not be considered corporal punishment under Georgia law.[8]  See Daniels v. Gordon, 503 S.E.2d 72, 74-75 (Ga. Ct. App. 1998) (concluding that a teacher who grabbed her student's face to get his attention was entitled to official immunity even though her acts did not constitute corporal punishment).

At the very least, the teacher's act evinces an intention to regain control of a student who not only refused to follow her directions, but who also deliberately used force against her to leave the classroom.  Because the teacher's response to the student's defiant misconduct was not entirely unreasonable in the light of Plaintiff's own factual allegations, we cannot infer – without more – that the teacher intended to do something wrongful or to cause the student significant injury.  See id. at 75 (finding "no evidence whatsoever of actual malice" where the teacher "was simply fulfilling her discretionary tasks of monitoring, supervising and controlling the students in her class when she grasped [the student's] face to get his attention").  Cf. Tittle v. Corso, 569 S.E.2d 873, 877 (Ga. Ct. App. 2002) (stating that the defendant police officer's act of "slamming" the plaintiff onto the

---

[8]Although the Georgia legislature has made express provision for immunity in corporal punishment cases, see Ga. Code Ann. § 20-2-732, "not all physical contact instigated by an educator amounts to corporal punishment."  Daniels v. Gordon, 503 S.E.2d 72, 75 (Ga. Ct. App. 1998). Nevertheless, "the general task imposed on teachers to monitor, supervise, and control students has also been held to be a discretionary action which is protected by the doctrine of official immunity." Id. (internal quotation marks omitted).

hood of the patrol car – without more – did not show that the "use of physical force was so excessive or unnecessary as to demonstrate a deliberate intent to do wrong"). We conclude, therefore, that the teacher is entitled to official immunity under Georgia law.

## IV. Conclusion

"'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a [person's] constitutional rights.'" Neal, 229 F.3d at 1076 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)) (alteration in original). Because the Constitution is not a font of tort law, it is not breached unless the offending forceful conduct is truly arbitrary, egregious, or conscious-shocking. Although misguided, the teacher's response to the student's misconduct, even if we accept Plaintiff's version of the facts, was not – in this context – so brutal or inhumane as to shock the judicial conscience. Nor can it fairly be said in the light of the student's misbehavior that the teacher's conduct was based on actual malice or an intent to injure. Accordingly, we affirm the district court's grant of summary judgment to all defendants.

AFFIRM.