[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-12587

Non-Argument Calendar

_____

ALMA GRANDY,
as guardian of M.G.,

Plaintiff-Appellant,

*versus*

STEPHEN CHRISTOPHER HUENKE,
in his individual capacity,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:20-cv-03292-MLB

_____

Before WILSON, LUCK, and LAGOA, Circuit Judges.

PER CURIAM:

This case arises from a fight between two female students at Newton High School in Georgia.  Officer Stephen Huenke, a policeman, de-escalated the fight by seizing one of the participants, Alma Grandy's daughter M.G., and escorting her to the school's main office.  Grandy, however, alleged that Officer Huenke was too rough with her daughter during the incident.  In her capacity as M.G.'s guardian, Grandy sued Officer Huenke in federal court, raising a claim for excessive force pursuant to 42 U.S.C. § 1983 and a Georgia state law claim for battery.  Officer Huenke then moved for summary judgment based on qualified immunity and official immunity, respectively.   The district court, after reviewing video footage of the altercation and the other relevant evidence, granted Officer Huenke's motion.  Because no reasonable jury could find in favor of Grandy, we affirm the district court's grant of summary judgment.

## I.    BACKGROUND

In August 2019, M.G., then fifteen years old, got into a fight with another female student in their high school's cafeteria. Officer Huenke and the school's Vice Principal, Michael Chapple, ran towards the scene and found the two students fighting on the ground. Officer Huenkle dropped to his knees, grabbed M.G., and after repeatedly instructing her to "stop," pinned her on her back.  M.G. struggled, lashed out, cursed at him, and knocked off his glasses.

Specifically, video footage showed that M.G. swung her fists at Officer Huenke and struck his eyeglasses, knocking them away, while yelling, "F*ck off, get the f*ck off me—get the f*ck off me bro." Officer Huenke then placed his left forearm across M.G.'s neck while he used his right hand to put his glasses back on. This pressured M.G.'s windpipe. Vice Principal Chapple picked up the other student and carried her away.

Moments later, Officer Huenke and M.G. rose, still entangled. M.G. continued to curse at Officer Huenke, continued to resist him, and knocked his glasses off his face again. Officer Huenke yelled, "you hit me," and then placed his hand on the front of M.G.'s neck, pushed her against the wall, and said, "you hit me in the f*cking mouth again and I'll charge you." Officer Huenke removed his hand from M.G.'s neck after about two seconds. M.G. continued to curse and resist until Officer Huenke handed her over to another officer. Officer Huenke later escorted M.G. to the school's main office. As he did so, Officer Huenke told M.G., "I don't know why you wouldn't stop and I don't know why you tried to swing on me. . . . You had no reason to swing on a cop." Officer Huenke then asked M.G. if she was okay, and she said that she was. After delivering M.G. to the main office, Officer Huenke told staff that he had hurt his arm during the altercation. The school nurse evaluated his arm and advised him to have it looked at further. Another officer from the cafeteria confirmed M.G. "swung" at and "hit" Officer Huenke.

In August 2020, Grandy sued Officer Huenke in district court for damages, asserting one claim for excessive force under 42 U.S.C. § 1983 and another claim for battery under O.C.G.A. § 16-5-23.1. Grandy alleged that Officer Huenke twice applied pressure on M.G.'s neck, that M.G. posed no immediate threat when Officer Huenke grabbed and pushed her into the wall, and that M.G. suffered back, neck, shoulder, and bilateral arm pain.

In turn, Officer Huenke moved for summary judgment on both claims, asserting qualified immunity on Grandy's excessive force claim and official immunity on Grandy's battery claim. The district court granted Officer Huenke's motion for summary judgment in full, agreeing that his qualified immunity and official immunity barred Grandy's claims.

As to the excessive force claim, the court explained that Grandy could not dispute that Officer Huenke was engaged in a discretionary function when he seized M.G., which shifted the burden to Grandy to show Officer Huenke used excessive force in violation of clearly established law. The district court found that Grandy had failed to cite "a materially similar case in her favor, much less a binding one." And the court found that Grandy had failed to invoke the obvious clarity doctrine—a "narrow exception" to the requirement for fact-specific precedent that requires a plaintiff to show "the official's conduct 'was so far beyond the hazy border between excessive and acceptable force that [the official] had to know he was violating the Constitution even without caselaw on point.'" *See Priester v. City of Riviera Beach*, 208 F.3d 919, 926

(11th Cir. 2000) (quoting *Smith v. Mattox*, 127 F.3d 1416, 1419 (11th Cir. 1997)). In doing so, the court relied upon our unpublished decision in *Hines v. Jefferson*, 795 F. App'x 707 (11th Cir. 2019), in which we found an officer's conduct—placing a student involved in a fight with another student in a chokehold and carrying her to the office by the neck—"was not 'so far beyond the hazy border between excessive and acceptable force'" that the officer knew she was violating the Constitution. *Id.* at 712–13 (quoting *Priester*, 208 F.3d at 926).

The district court found that this case's facts presented an even stronger case for qualified immunity than *Hines* because (1) the neck contact "lasted only a few seconds (not minutes)," (2) it involved a hold and a push (not a lift)," (3) Officer Huenke "never put his hands or arms *around* M.G.'s neck (no choke hold)," (4) "M.G. did not express discomfort at the time (no breathing complaints)," (5) she told Officer Huenke she was fine, nothing suggests she experienced any aftereffects (no pain or neck brace), (6) "M.G.'s resistance included cursing and striking [Officer Huenke] (not just wriggling to get away)," and (7) Officer Huenke "had to get medical attention after the encounter." The district court also declined to consider Grandy's facts that Officer Huenke's use of force violated "his employer's written policy" and injured M.G.'s back and neck because she failed to present them in her N.D. Ga. Local Rule 56.1 filing in the required format. But, the district court explained, those facts would not have affected the outcome of the case, as an officer's failure to comply with an employer's policies and the fact

that a plaintiff is injured during a confrontation with police did not necessarily equate to excessive force in violation of the Constitution. The district court noted that the other facts in the case weighed too strongly in the other direction to change the outcome.

As to the Georgia law battery claim, the district court found that Grandy had failed to show Officer Huenke acted with actual malice or intent to injure, as required under Georgia law. As such, the district court concluded that the battery claim was barred by official immunity.

Grandy then filed this timely appeal.

## II.    STANDARD OF REVIEW

We review "a district court's grant of summary judgment de novo, applying the same legal standards used by the district court." *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1234 (11th Cir. 2010). "Summary judgment is appropriate where, viewing the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party, there is no genuine issue of any material fact, and the moving party is entitled to judgment as a matter of law." *Id.* at 1234.

## III.    ANALYSIS

On appeal, Grandy argues that she offered more than sufficient evidence to overcome Officer Huenke's motion for summary judgment as to her excessive force and Georgia law battery claims. We address each claim in turn.

### A.    Excessive Force Claim

Section 1983 provides that any person who, under color of state law, deprives a person of "any rights, privileges, or immunities secured by the Constitution and laws" shall be liable to the affected person.  42 U.S.C. § 1983.  A claim that law enforcement officers used excessive force during an arrest or other seizure of an individual are evaluated under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388, 395 (1989).  Objective reasonableness "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396.  Further, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97.

Additionally, an officer's liability is limited in certain situations by the doctrine of qualified immunity, which "shields government officials from liability for civil damages for torts committed while performing discretionary duties unless their conduct violates a clearly established statutory or constitutional right." *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir.  2008).  "[I]n an excessive force case, 'qualified immunity applies unless application of the standard would inevitably lead every reasonable officer . . . to conclude the force was unlawful.'" *Slicker v.  Jackson*, 215 F.3d 1225,

1232 (11th Cir. 2000) (omission in original) (quoting *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559 (11th Cir. 1993)).

For qualified immunity to apply, the "public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Gilmore v. Hodges*, 738 F.3d 266, 272 (11th Cir. 2013) (quoting *Terrell v. Smith*, 668 F.3d 1244, 1250 (11th Cir. 2012)). Once the official proves that he was acting within the scope of his discretionary authority, the burden then shifts to the plaintiff, who must satisfy the following two-pronged inquiry: "(1) whether the facts that a plaintiff has shown make out a violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct." *Id.* at 272. To make this showing, the plaintiff must prove "the preexisting law was so clear that, given the specific facts facing a particular officer, one must say that 'every reasonable official would have understood that what he is doing violates' the Constitutional right at issue." *Gates v. Khokhar*, 884 F.3d 1290, 1302 (11th Cir. 2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). "The critical inquiry is whether the law provided the [official] with 'fair warning' that [his] conduct violated the Fourth Amendment." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (quoting *McClish v. Nugent*, 483 F.3d 1231, 1248 (11th Cir. 2007)). "Fair warning is most commonly provided by materially similar precedent from the Supreme Court, this Court, or the highest state court in which the case arose." *Gates*, 884 F.3d at 1296. Only binding precedent can create clearly established law.

*See J W ex rel. Williams v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1260 n.1 (11th Cir. 2018).

If a plaintiff cannot point to a materially similar case, she can establish fair warning only if the defendant's conduct violated federal law "as a matter of obvious clarity." *Coffin*, 642 F.3d at 1014. The obvious-clarity doctrine requires a plaintiff to demonstrate that the officer's conduct "lies so obviously at the very core of what the Fourth Amendment prohibits that unlawfulness of the conduct was readily apparent to the officer, *notwithstanding the lack of fact-specific case law*." *Stephens v. DeGiovanni*, 852 F.3d 1298, 1315 (11th Cir. 2017) (emphasis in original) (quoting *Fils v. City of Aventura*, 647 F.3d 1272, 1288 (11th Cir. 2011).

Grandy argues that the district court erred in granting summary judgment in favor of Officer Huenke because she "offered more than sufficient evidence to overcome [the] [m]otion" by way of "testimony and video evidence." We disagree.

Grandy has never disputed that Officer Huenke was acting within the scope of his discretionary authority as a police officer when he de-escalated the fight between M.G. and the other female student. Thus, Grandy must prove that Officer Huenke used excessive force in violation of clearly established law. But Grandy has never, not below and not now on appeal, cited a binding case in her favor—or even a materially similar one.

Accordingly, Grandy must use the obvious-clarity method to prove her claim. But obvious-clarity cases are "rare" and

constitute "a narrow exception" to the requirement for fact-specific precedent. *Coffin*, 642 F.3d at 1015. Indeed, to invoke the doctrine, Grandy must show that Officer Huenke's conduct "was so far beyond the hazy border between excessive and acceptable force that [he] had to know he was violating the Constitution even without caselaw on point." *See Priester*, 208 F.3d at 926 (quoting *Smith*, 127 F.3d at 1419). To be clear, "[u]nder this test, the law is clearly established, and qualified immunity can be overcome, only if the standards [of objective reasonableness] set forth in *Graham* and our own case law 'inevitably lead every reasonable officer in [the defendant's] position to conclude the force was unlawful.'" *Lee v. Ferraro*, 284 F.3d 1188, 1199 (11th Cir. 2002) (second alteration in original) (quoting *Priester*, 208 F.3d at 926).

For example, in *Priester*, a suspect, after allegedly stealing roughly $20 of snacks, submitted immediately to police and complied with all of the police's instructions, but the officer allowed his dog to attack the suspect for at least two minutes. 208 F.3d at 927. We concluded that the obvious clarity doctrine applied because "[n]o reasonable police officer could believe that this force was permissible given" the facts of the case. *Id.* Similarly, in *Lee*, we found this standard was met where an officer took the arrestee to the back of a car and slammed the arrestee's head against the trunk after the person was placed in handcuffs, was completely secured, and was not resisting. 284 F.3d at 1199. In doing so, we stated we were "applying the clear and obvious principle that once an arrest has been fully secured and any potential danger or risk of flight vitiated,

a police officer cannot employ the severe and unnecessary force allegedly used" in that case.  *Id.* at 1200.

Viewed in the light most favorable to Grandy, as we must at the summary judgment stage, we conclude that the district court did not err in finding Officer Huenke's conduct does not fall within the narrow obvious-clarity exception.[1]  Here, M.G. was involved in a fistfight with another student and resisted Officer Huenke's attempts to restrain her in his attempt to break up the fight.  M.G. swung at the officer, knocked his glasses off twice, and cursed at him repeatedly.  Officer Huenke reacted by applying pressure to M.G.'s neck on two occasions, each of which only lasted a few seconds and did not involve Officer Huenke placing M.G. in a chokehold.  M.G. also did not express discomfort at the time, e.g., did not complain of not being able to breath.  And Officer Huenke received medical attention after the incident.

Given the particular facts of this case,[2] we conclude that Officer Huenke's conduct was not "so far beyond the hazy border

---

[1] We note that the district court relied on our unpublished decision in *Hines*—a case with very similar facts to the instant case—to find that the obvious clarity doctrine did not apply to this case.  *See* 795 F. App'x at 710–13.  While *Hines* is not binding on us, we note that the facts of *Hines* were more egregious than those of the instant case, yet we did not find that the obvious clarity doctrine applied.  *See id.* at 713.

[2] Grandy also asserts that Officer Huenke's alleged violation of his employer's policy against neck restraints and the alleged back and neck injuries M.G. suffered creates an issue of material fact to defeat summary judgment, we disagree.  The district court found that Grandy did not comply with Local Rule

between excessive and acceptable force that [he] had to know he was violating the Constitution" and that Grandy has not shown the obvious clarity doctrine applies.  Accordingly, Officer Huenkle is entitled to qualified immunity, and the district court did not err in granting summary judgment on this claim.

### B.  State Law Battery Claim

Under Georgia law, a person commits the tort of battery when he "intentionally causes substantial physical harm or visible bodily harm to another." O.C.G.A. § 16-5-23.1(a). Under Georgia's doctrine of official immunity, Georgia's county police officers—like Officer Huenke—"are subject to suit" for a claim of battery "only when they negligently perform or fail to perform their ministerial functions or when they act with actual malice or intent to cause injury in the performance of their official functions." *Peterson v. Baker*, 504 F.3d 1331, 1339 (11th Cir. 2007) (quoting *Gilbert v. Richardson*, 452 S.E.2d 476, 483 (1994)).  To be clear, actual malice under Georgia law "is a demanding standard." *Black v. Wiginton*, 811 F.3d 1259, 1266 (11th Cir. 2016).  Georgia courts have explained actual malice requires "a deliberate intention to

---

56.1, a rule which we hold in "high esteem" and have instructed district courts to apply at the summary judgment stage "to disregard or ignore evidence relied on by the respondent—but not cited in its response to the movant's statement of undisputed facts—that yields facts contrary to those listed in the movant's statement." *Reese v. Herbert*, 527 F.3d 1253, 1268 (11th Cir. 2008).  But, as the district court found, even considering these facts, they do not change our analysis, i.e., that Grandy has failed to show that the obvious clarity doctrine applies to the facts of this case.

wrong and denotes express malice or malice in fact." *Wilson v. Cromer*, 847 S.E.2d 213, 217 (Ga. Ct. App. 2020) (quoting *Selvy v. Morrison*, 665 S.E.2d 401, 404–05 (Ga. Ct. App. 2008)); *accord Black*, 811 F.3d at 1266. Intent to injure likewise imposes a high bar that "contains aspects of malice, perhaps a wicked or evil motive" and requires "an actual intent to cause harm to the plaintiff, 'not merely an intent to do the act purportedly resulting in the claimed injury.'" *Kidd v. Coates*, 518 S.E.2d 124, 125 (Ga. 1999) (quoting *Frame v. Boatmen's Bank*, 782 S.W.2d 117, 121 (Mo. App. 1989)).

For example, in *Peterson*, we held a teacher had official immunity under Georgia law when she grabbed a student by the neck, leaving him bruised and scratched, because her "act evince[d] an intention to regain control of a student who not only refused to follow her directions, but who also deliberately used force against her to leave the classroom." 504 F.3d 1331 at 1334–40. Pertinently, we reasoned that because "the teacher's response to the student's defiant misconduct was not entirely unreasonable" in light of the facts, it was impossible to conclude "the teacher intended to do something wrongful or cause the student significant injury." *Id.* at 1340.

Grandy argues the evidence she provided is sufficient to defeat the district court's determination that her battery claim against Officer Huenke was barred by official immunity. We disagree, as Grandy has failed to show that Officer Huenke acted with actual malice or intent to do something wrongful to M.G. or cause her significant injury based on this record. Here, similar to *Peterson*,

Officer Huenke repeatedly gave M.G. instructions to stop fighting with the other student. When M.G. ignored his instructions, Officer Huenke intervened. M.G. then cursed at Officer Huenke and deliberately struck the officer several times, which resulted in knocking off his glasses, while he told her to stop resisting. In other words, M.G. was at least as defiant as the student in *Peterson* in a more chaotic situation, i.e., a fight between two students. *Cf.* 504 F.3d at 1334–35. Further, the degree of force used by Officer Huenke in this case—and the length of time that force was used— was less than that used by the teacher in *Peterson* under less egregious circumstances. *Cf. id.*

As in *Peterson*, "[a]t the very least," Officer Huenke's actions "evince[d] an intention to regain control of a student who not only refused to follow [his] directions, but who also deliberately used force against [him]" while trying to continue a fight against another student. *See id.* at 1340. Therefore, Officer Huenke's "response to the student's defiant misconduct was not entirely unreasonable" in light of the facts of the case. *See id.* Accordingly, we conclude that Officer Huenke is entitled to official immunity under Georgia law as to Grandy's battery claim.

## IV.    CONCLUSION

For the reasons stated, we affirm the district court's grant of summary judgment.

**AFFIRMED.**