[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 6, 2000
THOMAS K. KAHN
CLERK

No. 98-9612

D. C. Docket No. 98-01474-1-CV-GET

DURANTE NEAL, a minor by his next friends;
EUGENE NEAL, et al.,

Plaintiffs-Appellants,

versus

FULTON COUNTY BOARD OF EDUCATION,
STEPHEN DOLINGER, Superintendent, et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Georgia

**(October 6, 2000)**

Before EDMONDSON and MARCUS, Circuit Judges, and HANCOCK[*], District
Judge.

MARCUS, Circuit Judge:

---

[*] Honorable James H. Hancock, U.S. District Judge for the Northern District of Alabama,
sitting by designation.

Plaintiff Durante Neal, a high school freshman and member of the varsity football team, appeals from the district court's dismissal of his complaint alleging that Tommy Ector, a high school teacher and football coach, violated his right under the Due Process Clause to be free from excessive corporal punishment. Ector allegedly struck Plaintiff with a metal weight lock, blinding him in one eye, as a form of punishment for Plaintiff's involvement in a fight with another student. The vast majority of Circuits have concluded that substantive due process principles established by the Supreme Court protect a student from corporal punishment that is intentional, obviously excessive, and creates a foreseeable risk of serious injury. Because we conclude that, on the facts alleged in this case, Plaintiff has stated a claim, we vacate the dismissal and remand for further proceedings.

## I.

According to the complaint, Plaintiff was a 14-year-old freshman at Tri-Cities High School and was a member of the varsity football team. During football practice, Royonte Griffin, another player, slapped Plaintiff in the face. Plaintiff reported this incident to Coach Ector, who told Plaintiff "you need to learn how to handle your own business." Plaintiff then picked up a weight lock and put it in his gym bag. After practice was over, Griffin again approached Plaintiff. Plaintiff

2

pulled the weight lock out of his bag, hit Griffin in the head with it, and then placed it back in his bag. The two students then began to fight.

While the two were fighting, Coach Ector and Principal Herschel Robinson were in the immediate area. Neither of them stopped the fight. Ector came over and began dumping the contents of Plaintiff's bag on the ground, shouting repeatedly "what did you hit him with; if you hit him with it, I am going to hit you with it." Ector then, in the presence of Robinson, took the weight lock and struck Plaintiff in the left eye. As a result of the blow, Plaintiff's eye "was knocked completely out of its socket," leaving it "destroyed and dismembered." According to Plaintiff, even after this blow, as Plaintiff's eye "was hanging out of his head, and as he was in severe pain," neither Coach Ector nor Principal Robinson stopped the fight.

Based on these alleged facts, Plaintiff sued Ector, Robinson, Superintendent Stephen Dolinger, and the Fulton County School Board under 42 U.S.C. § 1983. Plaintiff claimed that Ector's use of corporal punishment was so excessive as to shock the conscience and violate his Fourteenth Amendment substantive due process rights. Plaintiff also claimed that the School Board, Superintendent, and Principal were liable for failing to train, instruct properly, and supervise Ector, and that this failure established a custom within the school district which resulted in the

3

violation of Plaintiff's rights.

Defendants moved to dismiss for failure to state a claim and lack of subject matter jurisdiction. The district court granted Defendants' motion for two reasons. The court first said that under Eleventh Circuit precedent, Ingraham v. Wright, 525 F.2d 909 (5th Cir. 1976) (en banc), aff'd on other grounds, 430 U.S. 651, 97 S. Ct. 1401, 51 L. Ed. 2d 711 (1977), corporal punishment does not give rise to a substantive due process claim. Moreover, said the district court, Ector's "reactive and spontaneous" conduct during a fight between students, while perhaps an assault under state law, was not corporal punishment.

## II.

We review de novo the district court's order granting the Defendants' motion to dismiss. See Harper v. Blockbuster Entertainment Corp., 139 F.3d 1385, 1387 (11th Cir. 1998). We accept as true the factual allegations in Plaintiff's complaint, and construe the facts in the light most favorable to the Plaintiff. See Parr v. Woodmen of World Life Ins. Co., 791 F.2d 888, 889 (11th Cir. 1986). A motion to dismiss may be granted only when the defendant demonstrates "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Harper, 139 F.3d at 1387 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

4

A.

We turn first to the question of whether Ector's conduct constitutes corporal punishment.  The answer to this question dictates the kind of analysis we must adopt for Plaintiff's claim.

We have not precisely defined "corporal punishment."  Black's Law Dictionary 235-36 (6th ed. 1991) defines it simply as "[p]hysical punishment as distinguished from pecuniary punishment or a fine; any kind of punishment inflicted on the body."  The touchstone of corporal punishment in schools appears to be the application of physical force by a teacher to punish a student for some kind of school-related misconduct.  See Ingraham, 430 U.S. at 661, 97 S. Ct. at 1407.

Many corporal punishment cases involve what might be called traditional applications of physical force, such as where school officials, subject to an official policy or in a more formal disciplinary setting, mete out spankings or paddlings to a disruptive student.  See Saylor v. Board of Educ., 118 F.3d 507, 511 (6th Cir. 1997); Fee v. Herndon, 900 F.2d 804, 806 (5th Cir. 1990); Wise v. Pea Ridge Sch. Dist., 855 F.2d 560, 562 (8th Cir. 1988); Garcia v. Miera, 817 F.2d 650, 653 (10th Cir. 1987); Hall v. Tawney, 621 F.2d 607, 609 (4th Cir. 1980).  Not all corporal punishment cases arise under those circumstances, however, and may involve less

5

traditional, more informally-administered, and more severe punishments. See London v. Directors of the DeWitt Pub. Schs., 194 F.3d 873, 875 (8th Cir. 1999) (school official's acts of dragging student across room and banging student's head against metal pole described as corporal punishment); P.B. v. Koch, 96 F.3d 1298, 1300 (9th Cir. 1996) (school principal's conduct in hitting student in mouth, grabbing and squeezing student's neck, punching student in chest, and throwing student headfirst into lockers was corporal punishment actionable as a constitutional violation); Metzger v. Osbeck, 841 F.2d 518, 519-20 (3d Cir. 1988) (school official's conduct consisting of grabbing student in chokehold and causing student to lose consciousness and fall to the pavement resulting in student breaking his nose and fracturing teeth analyzed under corporal punishment framework); Carestio v. School Bd. of Broward County, 79 F. Supp. 2d 1347, 1348 (S.D. Fla. 1999) (school employees' conduct in ganging up on student and beating him described as corporal punishment); Gaither v. Barron, 924 F. Supp. 134, 135-36 (M.D. Ala. 1996) (teacher's head-butting of student described as corporal punishment).

With those decisions in mind, we think that, in the circumstances of this case, Ector's conduct -- as alleged by Plaintiff -- does amount to corporal punishment. Ector was spurred to act by Plaintiff's misconduct on school

6

premises. Ector's intent to discipline Plaintiff for that act is evidenced by his statement to Plaintiff that "If you hit him with it, I'll hit you with it." And Ector ultimately did use physical force against Plaintiff. This case is not one where a teacher used reasonable force to restore order in the face of a school disturbance and merely shoved or grabbed fighting students to separate them. On the contrary, Ector never attempted to break up the fight between Plaintiff and Reyonte Griffin. Reading the complaint in the light most favorable to the Plaintiff, the force allegedly used by Ector was related to Plaintiff's misconduct at school and was for the purpose of discipline. As such, it constitutes corporal punishment.

B.

Having determined that Ector's conduct was corporal punishment, we turn next to the question of whether Ingraham v. Wright -- the leading corporal punishment case in this Circuit -- dictates the outcome of this appeal. Defendants argue, and the district court agreed, that under the former Fifth Circuit's decision in Ingraham, corporal punishment, regardless of its severity, may never give rise to a substantive due process claim. Although the former Fifth Circuit's opinion is binding precedent, we do not agree with the district court's interpretation of that case. The former Fifth Circuit's opinion does not foreclose a substantive due process claim in the circumstances alleged here.

7

In <u>Ingraham</u>, two students had been paddled and spanked by school administrators pursuant to a school policy authorizing corporal punishment. The students brought suit claiming, among other things, that the school's application of corporal punishment violated their substantive due process rights under the Fourteenth Amendment. The former Fifth Circuit rejected that claim, explaining that "the plaintiffs' right to substantive due process is a guaranty against arbitrary legislation, demanding that the law not be unreasonable and that the means selected shall have a real and substantial relation to the object sought to be attained." 525 F.2d at 916.

In support of its ruling, the former Fifth Circuit said that corporal punishment was not, either in concept or as authorized by the school board, "arbitrary, capricious, or wholly unrelated to the legitimate state purpose of determining its educational policy," and that "corporal punishment, as one of the means used to achieve an atmosphere which facilitates the effective transmittal of knowledge, has [a] 'real and substantial relation to the object sought to be attained." <u>Id.</u> at 916-17. The court also emphasized that the school district's corporal punishment policy "established standards which tend[ed] to eliminate arbitrary or capricious elements in any decision to punish." <u>Id.</u>[1] Furthermore,

_____

[1]The pertinent Dade County School Board Policy said that corporal punishment was only authorized after conferral with the principal and that the principal would determine the necessity

given its decision that corporal punishment (either in theory or as administered under the school district's policy) was neither arbitrary nor unrelated to legitimate educational goals, the court said that it would not look "at each individual instance of punishment to determine if it has been administered arbitrarily or capriciously. We think it a misuse of our judicial power to determine, for example, whether a teacher has acted arbitrarily in paddling a particular child for certain behavior or whether in a particular instance of misconduct five licks would have been a more appropriate punishment than ten licks." Id.

The former Fifth Circuit in Ingraham did not say that under no set of circumstances could corporal punishment rise to the level of a constitutional violation. Moreover, the facts of Ingraham are too different from the facts of this case for Ingraham to control. In Ingraham, the court decided the issue before it then, concluding that when corporal punishment is administered pursuant to a school policy which contains sufficient constraints and restrictions to prevent arbitrary behavior by school officials, the court would not look at each individual instance of corporal punishment to determine if a teacher had acted arbitrarily.

---

for corporal punishment and would designate the time, place and person to administer the punishment. The punishment was to be administered in the presence of another adult and under conditions not calculated to subject the student to ridicule and shame. Notably, the policy also said that no instrument should be used which would cause physical injury to the student and no part of the body above the waist or below the knees should be struck. See id. at 916 n.6

9

This case is significantly different. In this case, no one argues that the blow struck by Ector was pursuant to a school corporal punishment policy. Ector did not confer with the school administrators before punishing Plaintiff, and Ector was not expressly authorized by school officials to administer the corporal punishment he allegedly inflicted upon Plaintiff. Instead, Ector (a teacher) summarily and arbitrarily punished Plaintiff (a student) by striking Plaintiff in the eye with a metal weight. The material facts of this case are profoundly different from those found in <u>Ingraham</u> and present a substantially different question; thus, the former Fifth Circuit's opinion in <u>Ingraham</u> does not control this appeal.

C.

Having found that the former Fifth Circuit's decision in <u>Ingraham</u> does not itself preclude this claim, we still must determine whether Plaintiff has actually stated a cause of action. Both this Court and the Supreme Court have "been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this uncharted area are scarce and open-ended." <u>Collins v. City of Harker Heights</u>, 503 U.S. 115, 125, 112 S. Ct. 1061, 1068, 117 L. Ed. 2d 261 (1992); <u>see also</u> <u>McKinney v. Pate</u>, 20 F.3d 1550, 1556 (11th Cir. 1994). We have both said repeatedly that the Fourteenth Amendment is not a "font of tort law" that can be used, through section 1983, to convert state tort claims into

10

federal causes of action. See County of Sacramento v. Lewis, 523 U.S. 823, 848, 118 S. Ct. 1708, 1718, 140 L. Ed. 2d 1043 (1998); McKinney, 20 F.3d at 1556. Nevertheless, we think for a number of reasons that a student-plaintiff alleging excessive corporal punishment can in certain circumstances assert a cause of action for a violation of his rights under the Fourteenth Amendment's Due Process Clause.

The substantive component of the Due Process Clause "protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'" Collins, 503 U.S. at 125, 112 S. Ct. at 1068 (quoting Daniels v. Williams, 474 U.S. 327, 331, 106 S. Ct. 662, 665, 88 L. Ed. 2d 662, 668 (1986)). "[T]he substantive component of the due process clause is violated by [state conduct] when it 'can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'" County of Sacramento, 523 U.S. at 847, 118 S. Ct. at 1717 (citation omitted). The concept of conscience-shocking duplicates no traditional category of common law fault, but "points clearly away from liability, or clearly toward it, only at the ends of the tort law's spectrum of culpability." Id. That is to say, "conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." Id. at 849, 118 S. Ct. at 1718.

11

Although the Supreme Court in Ingraham declined to review the petitioner's argument that excessive corporal punishment violated substantive due process, the Court strongly suggested a favorable view of that position. The Court explained that "corporal punishment in public schools implicates a constitutionally protected liberty interest." 430 U.S. at 672, 97 S. Ct. at 1413. It also explained that "where school authorities, acting under color of state law, deliberately decide to punish a child for misconduct by restraining the child and inflicting appreciable physical pain, we hold that Fourteenth Amendment liberty interests are implicated." Id. at 674, 97 S. Ct. at 1414. Most notably, in the course of deciding that state law remedies were adequate to protect against deprivations without procedural due process, the Court observed "there can be no deprivation of substantive rights as long as disciplinary corporal punishment is within the limits of the common-law privilege [to use reasonable force in disciplining children]." Id. at 676, 97 S. Ct. at 1415 (emphasis added).

Based upon this language, almost all of the Courts of Appeals to address the issue squarely have said that a plaintiff alleging excessive corporal punishment may in certain circumstances state a claim under the substantive Due Process Clause. See, e.g., London, 194 F.3d at 876-77 (citing Wise, 855 F.2d at 564-65) (Eighth Circuit); Saylor, 118 F.3d at 514 (Sixth Circuit); Metzger, 841 F.2d at 520

12

(Third Circuit); Garcia, 817 F.2d at 653 (Tenth Circuit); Hall, 621 F.2d at 611-614 (Fourth Circuit); but see Fee, 900 F.2d at 808 (Fifth Circuit). As the Fourth Circuit reasoned in Hall, where an exercise of corporal punishment is "so brutal, demeaning and harmful as literally to shock the conscience of the court," 621 F.2d at 613, a student's substantive due process rights are implicated just as they would be in other settings.[2] We agree, and join the vast majority of Circuits in confirming that excessive corporal punishment, at least where not administered in conformity with a valid school policy authorizing corporal punishment as in Ingraham, may be actionable under the Due Process Clause when it is tantamount to arbitrary, egregious, and conscience-shocking behavior.

The cases identify several factors to be considered in determining whether a student-plaintiff's allegations of excessive corporal punishment rise to the level of arbitrary and conscience-shocking behavior. Consistent with the cases, we hold

------

[2]Even the Fifth Circuit has agreed that "corporal punishment in public schools is a deprivation of substantive due process when it is arbitrary, capricious, or wholly unrelated to the legitimate state goal of maintaining an atmosphere conducive to learning." Fee, 900 F.2d at 808 (internal quotation omitted). Nevertheless, that court has refused to recognize a cause of action where adequate state law remedies exist. Id. ("Our precedents dictate that injuries sustained incidentally to corporal punishment . . . do not implicate the due process clause if the forum state affords adequate post-punishment civil or criminal remedies for the student to vindicate legal transgressions."). No other court has adopted this exception, which has been expressly rejected by other Circuits. See, e.g., P.B., 96 F.3d at 1302 n.3. The Fifth Circuit's approach is also at odds with our own precedent. See, e.g., McKinney, 20 F.3d at 1556-57 (unlike a procedural due process claim, "[a] violation of a substantive due process right . . . is complete when it occurs; hence, the availability vel non of an adequate post-deprivation state remedy is irrelevant").

13

that, at a minimum, the plaintiff must allege facts demonstrating that (1) a school official intentionally used an amount of force that was obviously excessive under the circumstances, and (2) the force used presented a reasonably foreseeable risk of serious bodily injury.[3] See London, 194 F.3d at 876-77; Saylor, 118 F.3d at 514; P.B., 96 F.3d at 1304; Metzger, 841 F.2d 518; Garcia, 817 F.2d at 655; Hall, 621 F.2d at 613.

In determining whether the amount of force used is obviously excessive, we consider the totality of the circumstances. In particular, we examine: (1) the need for the application of corporal punishment, (2) the relationship between the need and amount of punishment administered, and (3) the extent of the injury inflicted. See, e.g., Metzger, 841 F.2d at 520 ("In determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very

_____

[3]Excessive corporal punishment claims have an objective and a subjective component, both of which must be met before a school official may be subject to liability. See Wise, 855 F.2d at 563 n.4 (stating that so long as the punishment was not excessive as a matter of law and was a reasonable response to the student's misconduct the intent of the one who administers the punishment is irrelevant). The punishment must objectively be obviously excessive and the teacher must subjectively intend to use that obviously excessive amount of force in circumstances where it was foreseeable that serious bodily injury could result.

14

purpose of causing harm.").

We need not decide today how "serious" an injury must be to support a claim. The injury alleged by Plaintiff here -- the utter destruction of an eye -- clearly was serious. Moreover, courts elsewhere treat the extent and nature of the injury as simply one factor (although an important one) to be considered in the totality of the circumstances. See, e.g., London, 194 F.3d at 876 (identifying "the extent of the injury inflicted" as a factor). We recognize that any time a student is slapped or paddled, whether pursuant to or apart from a school policy, the student may suffer some pain or injury. But the kind of minor injury suffered by a student during the administration of traditional corporal punishment will rarely, if ever, be the kind of injury that would support a federal due process claim for excessive corporal punishment under the test we adopt today.

As Judge Friendly reasoned in Johnson v. Glick, 481 F.2d 1028 (2d Cir. 1973), addressing a prison guard's use of force to discipline an inmate:

> Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a [person's] constitutional rights. In determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

Id. at 1033. The test we adopt today will, we think, properly ensure that students

will be able to state a claim only where the alleged corporal punishment truly reflects the kind of egregious official abuse of force that would violate substantive due process protections in other, non-school contexts. We do not open the door to a flood of complaints by students objecting to traditional and reasonable corporal punishment.

On the facts of this case, and consistent with the logic of almost all courts considering the subject, we conclude that Plaintiff has stated a claim. Even assuming that it would not have been improper per se for Ector to have administered some amount of corporal punishment to Plaintiff due to Plaintiff's misconduct, Ector allegedly went much further, intentionally using an obviously excessive amount of force that presented a reasonably foreseeable risk of serious bodily injury. Ector hit Plaintiff in the eye with a metal weight, causing severe injury (indeed, Plaintiff permanently lost the use of his eye). Ector did not strike Plaintiff while trying to break up the fight, nor did he simply punish him by slapping him or administering some other amount of force that arguably might be reasonable. Instead, Ector came upon the scene of the fight, searched Plaintiff's bag while repeatedly shouting, "If you hit him with it, I'm going to hit you with it," found the weapon that Plaintiff had used, and then intentionally struck Plaintiff in the head with it and knocked out Plaintiff's eye.

16

Because Plaintiff has adequately alleged a violation of his right under the Fourteenth Amendment to be free from excessive corporal punishment, we vacate the district court's judgment dismissing the case, and remand for further proceedings consistent with this opinion.[4]

VACATED AND REMANDED.

---

[4]Because the district court did not address whether Plaintiff's allegations state a valid claim against all Defendants, we do not reach that question.

EDMONDSON, Circuit Judge, dissents.