[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-10162

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 23, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 07-00497-CV-GET-1

PAMELA DAVIS,
LORENZO DAVIS,
Individually and on Behalf of the Estate of
TYLER DAVIS, Deceased,

Plaintiffs-Appellees,

versus

LEE CARTER,
PETER CARLSON,
STACEY WILBORN,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(January 23, 2009)**

Before BLACK, PRYOR and COX, Circuit Judges.

BLACK, Circuit Judge:

This case involves an action pursuant to 42 U.S.C. § 1983, filed by Pamela Davis and Lorenzo Davis individually and on behalf of the estate of their son, Tyler Davis, for alleged violations of his substantive due process rights under the Fourteenth Amendment to the United States Constitution. The gravamen centers around Tyler Davis's death the morning after a voluntary workout session for the Rockdale County High School (RCHS) football team, where Plaintiffs allege Tyler Davis was subjected to an intense and unreasonable practice that caused him to collapse and die the next morning. Plaintiffs sued Rockdale County Public Schools, the State of Georgia, and various employees of RCHS, including three RCHS football coaches: Lee Carter, Peter Carlson, and Stacey Wilborn (coaches). The district court dismissed all defendants except the coaches. The issue on appeal is whether the district court erred in denying the coaches' motion to dismiss based on qualified immunity. We conclude the coaches were entitled to qualified immunity and remand for the district court to enter judgment on behalf of coaches Lee Carter, Peter Carlson, and Stacey Wilborn.

I.

On February 28, 2007, Plaintiffs filed a complaint individually and on behalf of the Estate of Tyler Davis in the United States District Court for the Northern District of Georgia. In their complaint, under 42 U.S.C. § 1983,

2

Plaintiffs allege the coaches violated their son's substantive due process rights during a voluntary workout session for the high school football team. Specifically, Plaintiffs allege the coaches failed to provide enough water to keep Davis hydrated, ignored signs and Davis's complaints that he was becoming dehydrated, subjected Davis to rigorous conditioning drills at the end of a two-hour practice, and failed to attend to Davis until after a team meeting, even though he had collapsed in the middle of the drills. Plaintiffs allege the coaches' actions culminated in Davis's death during the early morning hours the following day. Although the workout was admittedly voluntary, Plaintiffs allege that if a student did not perform all the exercises and activities in the workout, he would be subject to further discipline from the coaches, such as additional drills, exclusion from tryouts, or demotion to the junior varsity team.

On April 2, 2007, the Defendants filed a motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6), arguing the complaint failed to state a claim and they were entitled to qualified immunity. On December 20, 2007, the district court entered an order granting the motion for Rockdale County Public Schools and some officials, but denying it for coaches Carter, Carlson, and Wilborn. In denying the motion to dismiss, the district court found the complaint sufficiently alleges a constitutional violation under the Fourteenth Amendment and the

3

defendant coaches were not entitled to qualified immunity. The coaches appealed to challenge the district court's denial of qualified immunity.

## II.

"We review de novo a district court's decision to grant or deny the defense of qualified immunity on a motion to dismiss, accepting the factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor." *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003) (citation omitted). When considering whether qualified immunity applies, a court conducts a two-part analysis.[1] *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001). First, a court must determine whether the facts alleged in the complaint show the alleged conduct violated the person's constitutional rights. *Id.* at 201, 121 S. Ct. at 2156.

Plaintiffs allege the coaches violated Tyler Davis's substantive due process rights during the workout session because: (1) Davis was deprived of water and exhibited signs of overheating; (2) when Davis collapsed on the football field, the coaches deliberately chose not to assist him or immediately summon medical assistance; and (3) these deliberate decisions resulted in the deprivation of his

---

[1] Before conducting the two-part analysis, "the public official 'must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)). It is undisputed that the coaches were acting within their discretionary authority during the football workout.

right to life, liberty, health, bodily integrity, and safety. The district court found these facts, if proven, are sufficient to support a finding that the coaches acted willfully or maliciously with an intent to injure Davis. We disagree.

"[T]he Due Process Clause was intended to prevent government officials from abusing their power, or employing it as an instrument of oppression." *County of Sacramento v. Lewis*, 523 U.S. 833, 846, 118 S. Ct. 1708, 1716 (1998) (internal quotations and citations omitted). The substantive component of the Due Process Clause "protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'" *Collins v. City of Harker Heights*, 503 U.S. 115, 125, 112 S. Ct. 1061, 1068 (1992) (quoting *Daniels v. Williams*, 474 U.S. 327, 331, 106 S. Ct. 662, 665 (1986)).

"[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *DeShaney v. Winnebago County Dep't of Soc. Servs.,* 489 U.S. 189, 195, 109 S. Ct. 998, 1003 (1989). In *DeShaney,* the Supreme Court expressly rejected the argument that a constitutional duty of protection can arise from a

state's "special relationship" with a particular individual where the state played no part in creating the danger posed to the individual. *Id.* at 197, 109 S. Ct. at 1004.[2]

Conduct by a government actor will rise to the level of a substantive due process violation only if the act can be characterized as arbitrary or conscience-shocking in a constitutional sense. *See Lewis*, 523 U.S. at 847, 118 S. Ct. at 1717. The concept of conscience-shocking conduct "duplicates no traditional category of common-law fault, but rather points clearly away from liability, or clearly toward it, only at the ends of the tort law's spectrum of culpability." *Id.* at 848, 118 S. Ct. at 1717. The Supreme Court has made clear "the due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm." *Id.* Thus, "the Fourteenth Amendment is not a 'font of tort law' that can be used, through section 1983, to convert state tort claims into federal causes of action." *Neal v. Fulton County Bd. of Educ.*, 229 F.3d 1069, 1074 (11th Cir. 2000) (citing *Lewis*, 523 U.S. at 848, 118 S. Ct. at 1718). To rise to the conscience-shocking level, conduct most likely must be

---

[2]  A duty of protection can arise where the state has a custodial relationship with the individual, arising from such circumstances as incarceration in prison or involuntary commitment in a mental institution. *Id.* at 198-99, 109 S. Ct. at 1004-05. Voluntary attendance at a school event does not create a custodial relationship with the school sufficient to give rise to a constitutional duty of protection. *Wright v. Lovin*, 32 F.3d 538, 540 (11th Cir. 1994). Even compulsory school attendance laws do not constitute a restraint on personal liberty sufficient to give rise to such an affirmative duty. *Wyke v. Polk County Sch. Bd.*, 129 F.3d 560, 569 (11th Cir. 1997).

"intended to injure in some way unjustifiable by any government interest[.]" *Lewis*, 523 U.S. at 849, 118 S. Ct. at 1718.

It is illustrative to review cases in the school setting where we have applied these principles. In *Neal*, the court concluded a high school coach's conduct rose to the level of a constitutional violation. 229 F.3d at 1076. There, the coach intentionally struck a student with a metal weight lock, knocking the student's eye out of its socket, as a form of punishment for his involvement in a fight with another student. *Id.* at 1071. In finding a violation of the student's substantive due process rights, the court reasoned that the school official "intentionally us[ed] an obviously excessive amount of force that presented a reasonably foreseeable risk of serious bodily injury." *Id.* at 1076. Importantly, it made clear the claims of excessive corporal punishment shaped the outcome. *Id.* Similarly, in *Kirkland v. Greene County Board of Education*, 347 F.3d 903 (11th Cir. 2003), the court concluded a high school principal violated a student's constitutional rights after he struck the student with a metal cane in the head, ribs, and back for disciplinary reasons. *Id.* at 904-05.

In two other cases, we held the facts alleged did not constitute a substantive due process violation because they did not shock the conscience. In *Dacosta v. Nwachukwa*, 304 F.3d 1045 (11th Cir. 2002), a college student, Melanie Dacosta,

brought a § 1983 claim against her instructor. *Id.* at 1047. Dacosta had followed her instructor out of the classroom after the instructor ignored Dacosta's questions in class. *Id.* The instructor then darted back inside the class and slammed the door on Dacosta, which caused her arm to shatter the glass window of the door and become lodged in the glass pane. *Id.* After the instructor unsuccessfully tried to knock Dacosta back from the door by swinging it violently several times, he reached through the cracked pane and shoved Dacosta's face. *Id.* The court held the district court erred in denying the instructor's claim of qualified immunity because the complaint alleged no more than the tort of battery, which is insufficient to reach constitutional proportions. *Id.* at 1049.

In *Nix v. Franklin County School District*, 311 F.3d 1373 (11th Cir. 2002), a high school teacher instructed his students to hold on to a live wire during a voltage-reading demonstration in his electromechanical class. *Id.* at 1374. He informed his students they might die if they accidently touched the exposed part of the wire. *Id.* The teacher increased the power to the wire, turned away to answer a question, and turned back to find a student who had touched the wire gasping for breath. *Id.* After the student died, his parents brought a § 1983 suit and alleged "the actions of the defendants 'were particularly arbitrary, reckless, and deliberately indifferent.'" *Id.* at 1376. The court emphasized that mere negligence

is insufficient to sustain a constitutional claim, while actions intended to injure and that are unrelated to any governmental interest are likely to rise to the conscience-shocking level. *Id.* at 1375. In denying relief to the plaintiffs, the court characterized its precedents as "explicit in stating that 'deliberate indifference' is insufficient to constitute a due-process violation in a non-custodial setting."[3] *Id.* at 1377. The court further pointed out that "[o]nly in the limited context of due-process claims based on excessive corporal punishment has this court held that the intentional conduct of a high-school educator may shock the conscience." *Id.* at 1378 (discussing *Neal*, 229 F.3d 1069).

We do not have a factually similar case in this Circuit, but the Fourth Circuit found no constitutional violation on analogous facts. In *Waybright v. Frederick County*, 528 F.3d 199 (4th Cir. 2008), 23-year-old Andrew Waybright died while training to join the Frederick County Fire Department in Maryland. *Id.* at 201. At a firefighter's direction, Waybright trained outdoors in hot weather, running 4.3 miles, doing squats, pushups, and other calisthenics, and running wind

---

[3] A year after *Nix*, the court suggested "[i]n some cases, a state official's deliberate indifference [to an extremely great risk of injury] will establish a substantive due process violation." *Waddell v. Hendry County Sheriff's Office*, 329 F.3d 1300, 1306 (11th Cir. 2003). The incident in *Waddell* did not take place in the school setting, and the court did not rule out that "the correct legal threshold for substantive due process liability . . . is actually far higher." *Id.* at 1306 n.5.

sprints. *Id.* at 202. The supervising firefighter did not bring water, communications, transportation, or first-aid equipment. *Id.* During the workout, Waybright began looking sick and pale and eventually collapsed. *Id.* Two bystanders offered to call 911 as he lay there, but another firefighter said there was no need. *Id.* Five minutes later, Waybright went into cardiac arrest and died of heat stroke an hour later at the hospital. *Id.* The Fourth Circuit dismissed his parents' § 1983 action, finding no constitutional violation because the defendants' conduct was "an under-reaction" or "misjudgment" rather than conscience-shocking behavior. *Id.* at 208.

In this case, Tyler Davis voluntarily participated in an extracurricular after-school activity, so no custodial relationship existed between himself and the school. Plaintiffs did not allege the coaches engaged in corporal punishment or physically contacted Davis. The allegations in the complaint do not support a finding that the coaches acted willfully or maliciously with an intent to injure Davis. Rather, the facts allege that the coaches were deliberately indifferent to the safety risks posed by their conduct to Davis. In this school setting case, the complaint's allegations of deliberate indifference, without more, do not rise to the conscience-shocking level required for a constitutional violation. While the circumstances of this case are truly unfortunate, Plaintiffs' claims are properly

10

confined to the realm of torts. We need not reach the second part of the qualified immunity analysis.

III.

The defendant coaches are entitled to qualified immunity under the facts of this case. Accordingly, we vacate the order denying summary judgment to the coaches on the federal claims and remand for the district court to enter judgment on behalf of coaches Lee Carter, Peter Carlson, and Stacey Wilborn on the federal claims and conduct any proceedings required.

**VACATED AND REMANDED.**