[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-14211
Non-Argument Calendar
_____

D.C. Docket No. 1:17-cv-03263-TWT


SANDRA HINES,
natural mother and legal guardian of K.S.,

Plaintiff – Appellant,

versus

FELICIA JEFFERSON,
Individual Capacity,

Defendant – Appellee.


_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(November 18, 2019)

Before WILLIAM PRYOR, BRANCH, and GRANT, Circuit Judges.

PER CURIAM:

This case arises from a fight between two female students at Newton High School in Georgia. Felicia Jefferson, the school resource officer, broke up the fight and escorted one of the students, fourteen-year-old K.S., to Jefferson's office. K.S. was then charged with obstructing an officer and disorderly conduct, though both charges were later dismissed. Sandra Hines, K.S.'s mother, filed this action on behalf of K.S., asserting claims under 42 U.S.C. § 1983 for excessive force, malicious prosecution, and excessive corporal punishment against Deputy Jefferson and the Newton County School System.[1] The district court granted summary judgment in favor of Deputy Jefferson and the school district. While the case was pending on appeal, Hines voluntarily dismissed her case against the school district, so we consider only those claims against Deputy Jefferson. Because no reasonable jury could find in favor of Hines, we affirm.

## I.    BACKGROUND

On August 29, 2016, K.S. was standing in the common area of the school before classes started when another student, D.B., tapped her on the shoulder and asked if she wanted to fight. K.S. responded that she did not want to fight and

---

[1] The excessive corporal punishment claim in the complaint alleges that the school district is liable because its failure to train and supervise Deputy Jefferson led to Deputy Jefferson's use of excessive corporal punishment. It appears this claim may have been plead only against the school district. However, because neither the district court nor Deputy Jefferson read the complaint this way and the claim against the school district necessarily rests on an allegation that Deputy Jefferson used excessive corporal punishment, we construe the complaint as pleading excessive corporal punishment against both Deputy Jefferson and the school district.

wanted to go to class. D.B. then punched K.S. in the face. K.S. then hit D.B. in the face, and D.B. pulled K.S.'s hair. K.S. grabbed D.B. around the upper part of her body, and the two girls fell to the floor where they continued punching each other. A crowd of students began to form in the common area to watch the fight. School officials attempted to break up the fight. At this point, K.S. and Deputy Jefferson's versions of the events diverge.

On the one hand, K.S. maintains that someone pulled D.B. off of her and that someone else, who was wearing khaki pants, grabbed K.S.'s legs trying to hold her, but she did not know the identity of either person. Another person then approached K.S. At the time, K.S. did not know who this person was either but she observed that the person was wearing brown pants that were part of a uniform she had seen people wearing around the school. K.S. later identified the person as Deputy Jefferson. Deputy Jefferson then told K.S. that she was under arrest and put her in a "choke hold," meaning that Deputy Jefferson, according to K.S., "scooped [her] up and was holding [her] by [her] neck pretty much." Deputy Jefferson put her forearms around K.S.'s neck and then carried her from the common area to her office, holding her by the neck with her feet dangling above the ground. The whole time Deputy Jefferson was "directly behind" K.S. K.S. says that on the way to the office she was trying to get down by "moving [her] whole body" and "[s]quirming, wiggling, twisting, [and] turning" to get away. It

3

took about two minutes to travel from the common area to the office.  K.S. asserts that as she struggled, she told Deputy Jefferson that she could not breathe, and that Deputy Jefferson said that she was resisting arrest.  Sometime on the way to the office, K.S. saw Deputy Jefferson's name on her uniform and was thereby able to identify her.  When they arrived at Deputy Jefferson's office, Deputy Jefferson let her go.

On the other hand, according to Deputy Jefferson, Coach Edgar Gousse was the person who initially held K.S. on the ground by her arms until Deputy Jefferson arrived.  Deputy Jefferson stated that she approached K.S. wearing her Newton County Sheriff's Office uniform of brown pants and a tan shirt marked with deputy insignia and patches.  She then leaned in front of K.S. so that K.S. could see who she was.  She also told Coach Gousse that he could let go of K.S., which Coach Gousse did.  Deputy Jefferson alleges that K.S. refused to comply with her instructions to stand up and go to the office, and that K.S. scratched her right arm and tried to grab Deputy Jefferson "by the neck of [her] shirt."  Deputy Jefferson maintains that she never picked K.S. up by the neck, noting that she was not strong enough or tall enough to do so; instead, she says that she stood behind K.S. and held K.S.'s upper arms and chest area, embracing her upper body, which was necessary because K.S. refused to walk independently and continued to fight.  Deputy Jefferson states that K.S.'s feet were not dangling and that they both

4

walked to the office with their feet on the ground, while K.S. grabbed at Deputy Jefferson's arms trying to "get free" of her embrace. When they got to the office, Deputy Jefferson released K.S. and K.S. sat in a chair. At no point did Deputy Jefferson ever handcuff K.S.

When she got home, K.S. complained that her neck was hurting, and her mother took her to see Dr. Richmond. K.S. testified that she had pain when moving her neck from side to side and that there was bruising and swelling on her neck. Dr. Richmond noted no external bruises or abnormal breathing on K.S.'s medical records. An x-ray of K.S.'s neck was normal. Dr. Richmond gave K.S. a foam neck collar to wear for a couple of weeks and told her that she could take ibuprofen for pain.

The District Attorney for Newton County then issued a delinquency petition against K.S. for obstruction of an officer and disorderly conduct. The district attorney ultimately dismissed the petition, explaining that "[w]hile there was sufficient probable cause for a Petition to be filed against [K.S.], the State is unable to prove its case beyond a reasonable doubt."

Hines filed this § 1983 action in the Magistrate Court of Newton County Georgia alleging claims of excessive force in violation of the Fourth Amendment against Deputy Jefferson, malicious prosecution in violation of the Fourteenth and Fourth Amendments against Deputy Jefferson, and a claim of excessive corporal

5

punishment in violation of the Fourth Amendment against both Deputy Jefferson and the Newton County School System.  The school district, with the consent of Deputy Jefferson, removed the case to the United States District Court for the Northern District of Georgia.  After discovery, Deputy Jefferson and the school district filed their respective motions for summary judgment.  The district court granted the motions, concluding that Deputy Jefferson's use of force was objectively reasonable and that, in any event, Deputy Jefferson was entitled to qualified immunity.  The district court also determined that Hines's malicious prosecution and corporal punishment claims failed as a matter of law.  Hines timely appealed.

Hines later moved this Court to dismiss Newton County School District from this appeal.  We granted the motion and dismissed the school district from the appeal.

## II.    STANDARD OF REVIEW

We review "a district court's grant of summary judgment *de novo*, applying the same legal standards used by the district court." *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1234 (11th Cir. 2010).  "Summary judgment is appropriate where, viewing the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party, there is no genuine issue of any material fact, and the moving party is entitled to judgment as a matter of law." *Id.*

6

### III.    DISCUSSION

**A.    Excessive Force**

Section 1983 provides that any person who under color of state law deprives a person of "any rights, privileges, or immunities secured by the Constitution and laws" shall be liable to the affected person. 42 U.S.C. § 1983. Claims that law enforcement officers used excessive force in the course of an arrest or other seizure of an individual are evaluated under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388, 395 (1989). Objective reasonableness must be judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. And "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97.

In addition, an officer's liability is limited in certain situations by the doctrine of qualified immunity. "Qualified immunity shields government officials from liability for civil damages for torts committed while performing discretionary duties unless their conduct violates a clearly established statutory or constitutional right." *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008). [I]n an excessive force case, 'qualified immunity applies unless application of the standard

would inevitably lead every reasonable officer . . . to conclude the force was unlawful.'" *Slicker v. Jackson*, 215 F.3d 1225, 1232 (11th Cir. 2000) (quoting *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559 (11th Cir. 1993)).

For qualified immunity to apply, a "public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Gilmore v. Hodges*, 738 F.3d 266, 272 (11th Cir. 2013) (quoting *Terrell v. Smith*, 668 F.3d 1244, 1250 (11th Cir. 2012)).  Once a public official proves that he was acting within the scope of his discretionary authority, "the burden shifts to the plaintiff to satisfy the following two-pronged inquiry: (1) whether the facts that a plaintiff has shown make out a violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct." *Id.*  Our inquiry "can begin with either prong; neither is antecedent to the other." *Morris v. Town of Lexington*, 748 F.3d 1316, 1322 (11th Cir. 2014) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).  We begin with the second prong.

Hines argues that the district court erred in determining that even if Jefferson violated K.S.'s constitutional rights, she is entitled to qualified immunity.  Hines claims that Jefferson's use of force was so obviously disproportionate that no reasonable officer could have believed her actions were constitutional.  We disagree.

There are two ways for a plaintiff to show that the law clearly established that certain conduct was excessive force. *Stephens v. DeGiovanni*, 852 F.3d 1298, 1315 (11th Cir. 2017). "The first is to point to a 'materially similar case [that has] already decided what the police officer was doing was unlawful.'" *Lee v. Ferraro*, 284 F.3d 1188, 1199 (11th Cir. 2002) (quoting *Willingham v. Loughnan*, 261 F.3d 1178, 1187 (11th Cir. 2001)). The second method is to show that the officer's conduct "lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the officer, *notwithstanding the lack of fact-specific case law*." *Stephens*, 852 F.3d at 1315 (quoting *Fils v. City of Aventura*, 647 F.3d 1272, 1291 (11th Cir. 2011). The second method is "known as 'obvious clarity.'" *Id.* (quoting *Fils*, 647 F.3d at 1291). Hines's argument that qualified immunity does not apply rests exclusively on obvious clarity.[2]

"To come within the narrow exception" of obvious clarity, "a plaintiff must show that the official's conduct 'was so far beyond the hazy border between excessive and acceptable force that [the official] had to know he was violating the Constitution even without caselaw on point.'" *Priester v. City of Riviera Beach*,

---

[2] Deputy Jefferson argues that Hines has abandoned any argument that Deputy Jefferson's conduct was contrary to clearly established law, including any obvious-clarity argument, by failing to raise it on appeal. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681–82 (11th Cir. 2014) (issues not raised in an appellant's initial brief are abandoned). Although Hines's discussion of obvious clarity is undoubtedly brief, we find that Hines has said enough to avoid abandoning the argument on appeal.

208 F.3d 919, 926 (11th Cir. 2000) (quoting *Smith v. Mattox*, 127 F.3d 1416, 1419 (11th Cir. 1997)).  To be clear, "[u]nder this test, the law is clearly established, and qualified immunity can be overcome, *only if* the standards set forth in *Graham* and our own case law 'inevitably lead every reasonable officer in [the defendant's] position to conclude the force was unlawful.'"  *Lee*, 284 F.3d at 1199 (quoting *Priester*, 208 F.3d at 926).  In *Priester*, we found this standard met where a suspect who had allegedly stolen roughly $20 of snacks submitted immediately to police and complied with all police instructions—yet the officer allowed his dog to attack the suspect for at least two minutes.  *Id.* at 927.  Similarly, in *Lee* we found this standard met where an officer took the arrestee to the back of a car and slammed the arrestee's head against the trunk after the person was placed in handcuffs, was completely secured, and was not resisting.  284 F.3d at 1199.

Viewed in the light most favorable to K.S., Deputy Jefferson's conduct, including placing K.S. in a choke hold and carrying her to the office by her neck, does not fall within the narrow obvious-clarity exception.  K.S. had been involved in a fistfight with another student.  School officials attempted to break up the fight, and Deputy Jefferson picked K.S. up by placing her forearms around K.S.'s neck and escorted her to Deputy Jefferson's office.  It is undisputed that during this time, K.S. was "squirming, wiggling, twisting, [and] turning" to get away from Deputy Jefferson, and upon reaching the office Deputy Jefferson released K.S.

10

Given these facts, it cannot be said that Deputy Jefferson's use of force was so grossly disproportionate to the situation that every reasonable officer in Deputy Jefferson's position would inevitably conclude that the use of force was unlawful. *Id*.; *see also Stephens*, 852 F.3d at 1315 (noting that "[t]he excessive-force 'area is one in which the result depends very much on the facts of each case'" (quoting *Brousseau v. Haugen*, 543 U.S. 194, 201 (2004))). Further, the medical records show that the amount of force used was minimal. *See Stephens*, 852 F.3d at 1325 ("The nature and extent of physical injuries sustained by a plaintiff are relevant in determining whether the amount and type of force used by the arresting officer were excessive."). While K.S. had some neck pain and was given a foam neck brace, she had no external bruising, she had no problems breathing, and an x-ray of her neck was normal. Accordingly, we conclude that Deputy Jefferson's conduct was not "so far beyond the  hazy border between excessive and acceptable force that [Deputy Jefferson] had to know [she] was violating the Constitution[.]" *Priester*, 208 F.3d at 926 (quoting *Smith*, 127 F.3d at 1419).

## B.    Malicious Prosecution

We have recognized "malicious prosecution as a violation of the Fourth Amendment and a viable constitutional tort cognizable under § 1983." *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003). To establish malicious prosecution under § 1983, "the plaintiff must prove a violation of [her] Fourth Amendment

11

right to be free from unreasonable *seizures* in addition to the elements of the common law tort of malicious prosecution." *Id.* The elements of the common law tort of malicious prosecution include: "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." *Id.* at 882.

"[T]he existence of probable cause defeats a § 1983 malicious prosecution claim." *Grider v. City of Auburn*, 618 F.3d 1240, 1256 (11th Cir. 2010). Probable cause is defined as "facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." *Id.* at 1257 (quoting *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975)). "To receive qualified immunity," however, "an officer need not have actual probable cause, but only 'arguable' probable cause," which exists where "reasonable officers in the same circumstances and possessing the same knowledge as the Defendant[] could have believed that probable cause existed to arrest Plaintiff." *Id.* (first quoting *Brown v. City of Huntsville*, 608 F.3d 724, 735 (11th Cir. 2010); then quoting *Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004)).

The district court concluded that Hines's claims on behalf of K.S. failed because Deputy Jefferson had probable cause to arrest K.S. for two crimes under

12

Georgia law—obstructing an officer and disorderly conduct.  We address each in turn to determine if Deputy Jefferson had probable cause.

Under Georgia law, a person commits misdemeanor obstruction of an officer when he "knowingly and willfully obstructs or hinders any law enforcement officer . . . in the lawful discharge of his or her official duties."  O.C.G.A. § 16-10-24(b).  Georgia courts have explained that "violence or forcible resistance is not required to prove" misdemeanor obstruction; "[a]rgument, flight, stubborn obstinance, and lying are all examples of conduct that may satisfy the obstruction element."  *Pinchon v. State*, 516 S.E.2d 537, 538 (Ga. Ct. App. 1999).  Again, Hines does not dispute that K.S. was "squirming, wiggling, twisting, [and] turning" to get away from Deputy Jefferson as Deputy Jefferson attempted to remove her from the area of the fight.  Hines, instead, argues that K.S. was justified in resisting arrest.  But that argument is misplaced because the question is whether an objectively reasonable officer in Deputy Jefferson's situation could have believed there was probable cause to arrest K.S.  The facts, viewed in the light most favorable to Hines, show that K.S. had recently been in a fistfight and was physically resisting Deputy Jefferson as she attempted to remove K.S. from the crowded common area.  Thus, a reasonable officer in Deputy Jefferson's position could have believed that there was arguable probable cause to arrest K.S. for obstruction of an officer.  *See Pinchon*, 516 S.E.2d at 538.

13

Alternatively, Hines argues that there was not arguable probable cause to arrest K.S. for obstruction of an officer because K.S. did not know Deputy Jefferson was a police officer. However, because the arguable probable cause inquiry focuses on the officer's knowledge at the time of the arrest, K.S.'s knowledge of Deputy Jefferson's status is irrelevant.[3] *Grider*, 618 F.3d at 1257.

A person commits disorderly conduct under Georgia law if she "[a]cts in a violent or tumultuous manner toward another person whereby such person is placed in reasonable fear of the safety of such person's life, limb, or health." O.C.G.A. § 16-11-39(a)(1). Hines argues that Deputy Jefferson did not have probable cause to arrest K.S. because Deputy Jefferson's statements at the school hearing established that she charged K.S. with disorderly conduct based on K.S.'s conduct towards her. Furthermore, Hines argues that, regardless, the fight between K.S. and the other student could not serve as probable cause because K.S. was defending herself in the fight and the other student was the initial aggressor. Although K.S. may not have started the fight, it is undisputed that she had been fighting with another student, punched that student in the face, and was "squirming, wiggling, twisting, [and] turning" to get away from Deputy Jefferson.

---

[3] Moreover, Hines's contention is undermined by K.S.'s testimony that she recognized Deputy Jefferson's uniform as something that she had seen other people wearing around the school, that she knew the uniform bore the insignia "Newton County," and that Deputy Jefferson immediately stated that K.S. was under arrest. Additionally, K.S. stated that while Deputy Jefferson was taking her to the office, she saw the words "Deputy Jefferson" somewhere on her uniform.

It is unclear the extent to which K.S. was still attempting to fight as school officials were trying to deescalate the situation.  In any event, viewing the evidence in the light most favorable to Hines, it is clear that K.S. was at least somewhat combative toward Deputy Jefferson and given that K.S. had recently been fighting with another student, Deputy Jefferson had arguable probable cause to arrest K.S. for disorderly conduct.

## C.     Excessive Corporal Punishment

Hines claimed in the district court that the Newton County School System is responsible for allowing Deputy Jefferson to violate K.S.'s rights by applying excessive corporal punishment.  The district court concluded that Hines's claim fails because she failed to establish that Deputy Jefferson's conduct constituted corporal punishment and failed to meet the requirements for municipal liability under § 1983 set out by the Supreme Court in *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978).  Hines voluntarily dismissed her case against the school system, so we address this claim only with respect to Deputy Jefferson.

The Supreme Court has recognized that "corporal punishment in public schools implicates a constitutionally protected liberty interest" under the Fourteenth Amendment.  *Ingraham v. Wright*, 430 U.S. 651, 672 (1977).  This Court has further explained that "excessive corporal punishment, at least where not

15

administered in conformity with a valid policy authorizing corporal punishment . . . may be actionable under the Due Process Clause when it is tantamount to arbitrary, egregious, and conscience-shocking behavior." *T.W. ex rel. Wilson v. Sch. Bd. of Seminole Cty.*, 610 F.3d 588, 598 (11th Cir. 2010) (quoting *Neal ex rel. Neal v. Fulton Cty. Bd. of Ed.*, 229 F.3d 1069, 1075 (11th Cir. 2000)). The first step in this inquiry is to determine whether the defendant's conduct constitutes corporal punishment. *Neal*, 229 F.3d at 1072. In making this determination, "[t]he key inquiry is not what form the use of force takes but whether the use of force is 'related to [the student's] misconduct at school and . . . for the purpose of discipline.'" *T.W.*, 610 F.3d at 598–99 (quoting *Neal*, 229 F.3d at 1073).

We have found that a school official engaged in corporal punishment where the circumstances indicated that the school official's use of physical force was intended as punishment. *Neal*, 229 F.3d at 1072–73. In *Neal*, a coach hit a student, who had been fighting with another student, in the head with a weight lock, blinding him in one eye. *Id.* at 1071. In concluding that the coach's action constituted corporal punishment, we noted that the teacher made his intent to discipline the student plain by stating, "If you hit him with it, I'll hit you with it." *Id.* at 1072. Further, we noted that the case was "not one where a teacher used reasonable force to restore order in the face of a school disturbance and merely

16

shoved or grabbed fighting students to separate them." *Id.* Indeed, the teacher in *Neal* did not even attempt to intervene to break up the fight between the two students. *Id.* at 1072–73.

Construing the facts in the light most favorable to Hines, we agree with the district court that Jefferson's use of force against K.S. does not constitute corporal punishment. Here, in stark contrast to the facts of *Neal*, there is no such evidence from which a reasonable jury could conclude that Deputy Jefferson's conduct was intended as discipline. Deputy Jefferson intervened immediately after the fight while various school officials were trying to separate the students. Deputy Jefferson used force against K.S. to escort K.S. away from D.B. and the crowd of students that had gathered to watch the fight and to restore order. Furthermore, Deputy Jefferson released K.S. when they got to her office. Thus, there is nothing in the record that could support a reasonable inference that Deputy Jefferson's use of force was a form of corporal punishment. Accordingly, the district court did not err in granting summary judgment in favor of Deputy Jefferson on this claim.

## IV.   CONCLUSION

We affirm the grant of summary judgment in favor of Deputy Jefferson.

**AFFIRMED.**