[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-13393

Non-Argument Calendar

_____

CHARLES THOMPSON,

Plaintiff-Appellant,

*versus*

SHERIFF OF INDIAN RIVER COUNTY, FLORIDA,
ANDREW DEAN,
MICHAEL SCOTT,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 2:21-cv-14184-KMM

_____

Before WILSON, GRANT, and ANDERSON, Circuit Judges.

PER CURIAM:

Charles Thompson made a furtive offer in what he thought was the secluded privacy of a spa massage room. But unbeknownst to him, the county sheriff's office had made a few surreptitious arrangements of its own. Thompson was arrested for soliciting prostitution based on footage from a surveillance camera that county officials had hidden at the spa. The officials had acted pursuant to a warrant, but Florida state courts concluded that the surveillance operation had violated the Fourth Amendment and that the evidence had to be suppressed.

Thompson sued two detectives and the county sheriff seeking damages under 42 U.S.C. § 1983. He now appeals the district court's dismissal of his action for failure to state a claim. But Thompson failed to show that the detectives violated a clearly established constitutional right, so the district court properly concluded that the detectives are entitled to qualified immunity. And Thompson also failed to identify a custom or policy constituting deliberate indifference to his constitutional rights, so he cannot succeed on his claim against the sheriff. We therefore affirm the district court's dismissal of Thompson's case.

I.

The Indian River County Sheriff's Office began hearing rumors that the East Sea Spa offered more than just ordinary

21-13393                 Opinion of the Court                 3

massages.   In late 2018, it opened an investigation into possible prostitution and human trafficking activities taking place at the spa. When a health inspection revealed evidence that spa workers were living at their place of business, the sheriff's office sought a "visual surveillance warrant" to allow the installation of four hidden video cameras in the spa.  A state judge granted the warrant and further ordered that "[w]hile monitoring the premises to be searched, the Sheriff shall take steps to minimize the invasion of privacy to any parties not engaged in the unlawful acts set forth in the affidavit."

Detectives set up cameras in four of the spa's massage rooms.  They monitored and recorded those rooms for 13 of the 60 days they were permitted to do so.  The detectives were targeting spa employees and male customers in their investigation.  But their surveillance equipment did not allow for a fine-tuned operation. The cameras enabled the detectives to record one room, all four rooms, or no rooms; it was not possible to stop recording a single room and continue recording the others.  So during recording sessions when  the massage rooms were being used by both male and female customers at the same time, the detectives recorded them all.  An assistant state attorney advised the lead detective that the team could continue this practice, which occurred four times in total.  Although the sheriff's office obtained newer cameras capable of more targeted surveillance, the investigation team did not stop its investigation and reapply for a warrant using the new cameras.

Thompson was arrested for soliciting prostitution based on evidence obtained from the surveillance videos. During the subsequent state criminal proceedings, he argued that the spa surveillance operation had violated the Fourth Amendment and that the videos should be suppressed. The trial court agreed, finding that Thompson had a legitimate expectation of privacy and that the sheriff's office had failed to minimize invasions of privacy as it had been ordered to do. A state appellate court upheld the order to suppress the video footage.

Emboldened by his success in state court, Thompson brought a 42 U.S.C. § 1983 action in federal court seeking damages from Sheriff Eric Flowers (in his official capacity) and Detectives Andrew Dean and Michael Scott. The district court dismissed the case for failure to state a claim, concluding that the detectives were protected by qualified immunity and that the sheriff could not be held liable for failure to train his officers. Thompson now appeals.

## II.

"We review de novo the district court's grant of a motion to dismiss under 12(b)(6) for failure to state a claim, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1275 (11th Cir. 2012) (quotation omitted). The same standard applies when a district court grants qualified immunity at the motion to dismiss stage. *Davis v. Carter*, 555 F.3d 979, 981 (11th Cir. 2009).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, it must allow a court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While we accept all the complaint's allegations as true, we are "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quotation omitted).

### III.

Thompson has sued Detectives Dean and Scott in their individual capacities and Sheriff Flowers in his official capacity, alleging that all three officials violated his Fourth Amendment rights. None of his claims survive dismissal.

Thompson's first two claims fail because both detectives are protected by qualified immunity. Qualified immunity balances accountability for public officials who abuse their power with protection for officials who make mistakes while reasonably performing their duties. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "We are required to grant qualified immunity to a defendant official unless the plaintiff can demonstrate two things: (1) that the facts, when construed in the plaintiff's favor, show that the official committed a constitutional violation and, if so, (2) that the law, at the time of the official's act, clearly established the unconstitutionality of that conduct." *Singletary v. Vargas*, 804 F.3d 1174, 1180 (11th Cir. 2015). We may consider these two requirements in any order. *Pearson*, 555 U.S. at 227.

Thompson has not shown that the officers' acts were violations of clearly established law. In determining whether a right is clearly established, we ask "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *J W by & Through Tammy Williams v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1259 (11th Cir. 2018). Legal precedent can show that a right is clearly established, but not just any case will do—the plaintiff must "point to a materially similar case decided at the time of the relevant conduct by the Supreme Court, the Eleventh Circuit, or the relevant state supreme court." *Id.*

Thompson does not do so. Instead he offers a single Tenth Circuit case as proof that the right the detectives allegedly violated was clearly established. *See United States v. Mesa-Rincon*, 911 F.2d 1433 (10th Cir. 1990). Thompson argues that the fact that other jurisdictions have found *United States v. Mesa-Rincon* persuasive should be enough to elevate it to "clearly established" status. But Thompson's view is not the law. Our precedent is clear: if there is no United States Supreme Court, Eleventh Circuit, or Florida supreme court case on point, the law is not clearly established. *See J W*, 904 F.3d at 1259.

Thompson further argues that the officers' conduct "so obviously violated the Constitution" that he need not point to a factually similar precedent. In rare cases, a plaintiff may establish that an officer's behavior was so egregious that he "had to know he was violating the Constitution even without caselaw on point." *Lee v. Ferraro*, 284 F.3d 1188, 1199 (11th Cir. 2002) (quotation

21-13393                Opinion of the Court                7

omitted).    For example, we have sometimes denied qualified immunity to police officers who inflicted serious physical injury on secured, nonthreatening arrestees, even when no prior case law closely matched the specific facts at issue.  *See id.* (collecting cases). Here no such egregious behavior is alleged.    The detectives conducted their investigation in accordance with the law as a reasonable officer would understand it.    They obtained a warrant and sought legal advice from an assistant state attorney about the proper scope of surveillance.    Nothing alleged by Thompson suggests that they "had to know" their actions were unlawful.

We hold that Detectives Dean and Scott are entitled to qualified immunity.    Because we conclude that Thompson's Fourth Amendment rights were not clearly established here, we need not ask whether the officers actually violated them.  *See Fils v. City of Aventura*, 647 F.3d 1272, 1287 (11th Cir. 2011).

Thompson's claim against Sheriff Flowers in his official capacity is similarly flawed.    A municipality may only be found liable under § 1983 where its official policy or custom is the "moving force" of a constitutional violation.  *Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978).    And as Thompson himself concedes, "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."  *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).    In short, liability only attaches

where "a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality." *Id.* at 389.

As the Supreme Court has explained, a "pattern of similar constitutional violations" is "ordinarily necessary" to establish liability for failure to train. *Connick v. Thompson*, 563 U.S. 51, 62 (2011). But not always. Where a plaintiff can produce "evidence of a single violation of federal rights" along with "a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation," a municipality can still be found liable. *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997); *see also Cooper v. Dillon*, 403 F.3d 1208, 1222–23 (11th Cir. 2005) (finding municipal liability where city official with policymaking authority enforced unconstitutional statute one time).

That is not the case here. Thompson alleges a single constitutional violation: Sheriff Flowers's failure to ensure that his officers were properly trained before conducting the surreptitious video surveillance that resulted in Thompson's arrest. But even assuming that the officers committed a constitutional violation, Thompson has not shown that the sheriff's office has "failed to train its employees to handle recurring situations" that will obviously lead to similar violations in the future. To the contrary, he alleges that it has procured cameras that will allow for less intrusive surveillance, suggesting that its future investigations will be more narrowly targeted.

At bottom, Thompson simply argues that Sheriff Flowers should be liable because his officers are not required to read *Mesa-Rincon*, the Tenth Circuit case from which Thompson draws his understanding of Fourth Amendment rights. But as we have explained, *Mesa-Rincon* is not binding law in this Circuit. We cannot hold a county official liable for failing to establish a training program that fully incorporates the law of other jurisdictions. Thompson has thus failed to state a claim against the sheriff.

⋆    ⋆    ⋆

Detectives Dean and Scott are protected by qualified immunity, and Thompson has not sufficiently alleged a failure-to-train claim against Sheriff Flowers. We therefore **AFFIRM** the district court's order dismissing the case.